IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DANIELLE PRANGER and GARRETT
HARRIS, individually and on behalf of
all others similarly situated,

          Plaintiffs,

    v.

OREGON STATE UNIVERSITY, a public
body of the State of Oregon; F. KING
ALEXANDER, in his capacity as member
of the Board of Trustees; MIKE BAILEY,
in his capacity as member of the Board of
Trustees; PATRICIA M. BEDIENT, in her
capacity as member of the Board of
Trustees; RANI BORKAR, in her capacity
as member of the Board of Trustees;
JULIA BRIM-EDWARDS, in her capacity
as member of the Board of Trustees;
DARALD W. CALLAHAN, in his
capacity as member of the Board of
Trustees; MICHELE LONGO EDER, in
her capacity as member of the Board of
Trustees; LAMAR HURD, in his capacity
as member of the Board of Trustees; PAUL
J. KELLY, JR., in his capacity as member of
the Board of Trustees; JULIE MANNING,
in her capacity as member of the Board of

No. 3:21-cv-00656-HZ

OPINION & ORDER

Trustees; PRESTON PULLIAMS, in his
capacity as member of the Board of Trustees;
KIRK E. SCHUELER, in his capacity as member of
the Board of Trustees; STEPHANIE
SMITH, in her capacity as member of the
Board of Trustees; and MICHAEL G.
THORNE, in his capacity as member of the
Board of Trustees.

Defendants.

Alexander Graven
Neil N. Olson
Paul B. Barton
OLSEN BARTON LLP
5 Centerpointe Dr., Suite 220
Lake Oswego, OR 97035

Daniel Kurowski
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL, 60611

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1201 Second Ave., Suite 2000
Seattle, WA 98101

Kathleen P. Lally
LYNCH CARPENTER, LLP
111 W. Washington St., Suite 1240
Chicago, IL, 60602

Attorneys for Plaintiffs

Gregory J. Mina
Nathan R. Morales
Sarah J. Crooks
Stephen F. English
PERKINS COIE LLP
1120 N.W. Couch St., 10th Floor
Portland, OR 97209

Attorneys for Defendants

HERNÁNDEZ, District Judge:

In Spring 2020, universities across the country were forced to shift from in-person classes to a remote learning environment in the wake of the COVID-19 pandemic. The named Plaintiffs in this case, Danielle Pranger and Garrett Harris ("Plaintiffs"), assert this class action lawsuit on behalf of all similarly situated students against Defendants Oregon State University ("OSU") and fourteen members of OSU's Board of Trustees ("Trustee Defendants") individually in their official capacities. Plaintiffs allege that Defendants violated the law by not providing students with refunds after OSU stopped all in-person classes, closed on-campus services and facilities, and shifted all classes online in response to the COVID-19 pandemic. This case now comes before the Court on Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Pursuant to Local Rule 7-1(d)(1), the Court resolved this motion without oral argument. As is discussed below, the Court grants in part and denies in part Defendants' Motion to Dismiss.

## BACKGROUND

### I.    Factual Background

OSU is Oregon's largest university located in Corvallis, Oregon, and Bend, Oregon. Class Action Complaint ("Compl.") ¶¶ 19, 26, ECF 1-1. The university has an enrollment of approximately 33,300 undergraduate, graduate, and professional students. *Id.* ¶ 26. The university runs on an academic quarter system, with the school year divided into four "quarters" or "terms." *Id.* ¶ 63.

Plaintiff Pranger is a full-time undergraduate student attending OSU. *Id.* ¶ 9. Plaintiff Harris is a full-time graduate student attending OSU. *Id.* ¶ 10. Both Plaintiffs are Oregon residents who paid OSU tuition and fees for the Winter, Spring, and Fall 2020 academic quarters. *Id.* ¶¶ 9-11. When choosing schools, Plaintiffs enrolled at OSU "to obtain the full experience of

live, in-person courses," and they specifically chose OSU due to "the campus location, accessibility of professors, and camaraderie with classmates both in the classroom and on campus." *Id.* ¶ 15. Plaintiffs used an online registration portal to register for on-campus classes for the Winter and Spring 2020 quarters. *Id.* ¶ 40. After registering, the registration portal provided a meeting time and an on-campus location where classes were to be held. *Id.*

OSU promotes its on-campus experience through its website and other promotional materials. *Id.* ¶¶ 27, 29-32. Through its promotional materials, OSU highlights the benefits of its campus location in Corvallis, campus buildings and facilities, and the importance of on-campus student life—which includes a mandatory live-on campus requirement for first-year students with limited exceptions. *Id.* ¶¶ 29-34, 56-57. Additionally, OSU provides students with an academic catalog ("Catalog"). *Id.* ¶ 47. The Catalog describes the opportunities available with on-campus classes, which includes "research conducted in laboratories on campus" and chances for "hands-on experience." *Id.* ¶ 51. The Catalog further highlights OSU's cultural resources on campus, which provides a place for students "to connect with once they arrive on campus." *Id.* ¶ 52.

Additionally, OSU distinguishes in-person classes from online "e-campus" classes in its catalog, promotional materials, and in its course registration process. *Id.* ¶¶ 37-38, 48-50. In-person classes are also more expensive than online, e-campus classes. *Id.* ¶ 73. For example, in the 2019-20 academic year at the Corvallis campus, full-time resident undergraduate students paid between $312 and $812 per credit, and full-time non-resident undergraduate students paid between $967 and $1,467 per credit. *Id.* ¶ 67. Meanwhile, e-campus undergraduate students paid between $224 and $360 per credit. *Id.* ¶ 69. Full-time resident graduate students paid between $479 and $681 per credit, and full-time non-resident graduate students paid between $925 and

$1,145 per credit. *Id.* ¶ 67. Contrastingly, e-campus graduate students paid between $560 and $848 per credit. *Id.* ¶ 69.  Moreover, full-time on-campus students, both undergraduates and graduates, paid around $623 in mandatory fees, including a health service fee, an incidental fee, and a building fee. *Id.* ¶ 70. E-campus students did not pay any mandatory fees except for a one-time matriculation fee that is paid by all students. *Id.* ¶ 72.

On March 11, 2020, in response to the COVID-19 pandemic, OSU announced that all remaining classes and Winter Quarter final exams would be administered remotely. *Id.* ¶¶ 3, 79. A week later, OSU announced its decision to move all Spring 2020 classes to a remote, online format. *Id.* ¶¶ 3, 80. OSU continued the remote learning format through Fall 2020 as well, with nearly 95% of classes held remotely at the Corvallis campus. *Id.* ¶ 81. As a result, students were encouraged to leave campus and return home, and students lost access to most on-campus services and facilities. *Id.* ¶¶ 4, 16, 84-87. Since shifting to a remote learning environment, OSU has not fully or partially refunded Plaintiffs, and similarly situated students, any portion of their tuition and fees. *Id.* ¶¶ 4, 74, 96.

## II.    Procedural Background

On March 5, 2021, Plaintiffs initiated this suit against Defendants, which was removed from Multnomah County Circuit Court to this District Court. Notice of Removal ¶ 1, ECF 1. Plaintiffs initially asserted six claims for relief against Defendants, and Plaintiffs agreed to voluntarily dismiss their fourth through sixth claims for relief without prejudice. Defs. Mot. Dismiss 1, ECF 16; *see* Compl. ¶¶ 113-77 (asserting six claims for relief). Accordingly, the remaining three claims are for (1) breach of express contract against OSU, Compl. ¶¶ 113-25; (2) breach of implied contract against OSU, *id.* ¶¶ 126-36; and (3) unjust enrichment against all

Defendants, *id.* ¶¶ 137-48. This case now comes on Defendants' Motion to Dismiss for failure to state a claim on Plaintiffs' remaining three claims for relief.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

**DISCUSSION**

Plaintiffs base their breach of contract and unjust enrichment claims on the premise that, in accepting admission to OSU, they agreed to pay tuition and fees in exchange for in-person classes and access to on-campus facilities and services, and OSU breached that promise after shifting to a remote learning environment in March 2020. Compl. ¶¶ 2-8. Plaintiffs allege that they "paid OSU for opportunities and services that they did not receive, including on-campus education, facilities, services, and activities." *Id.* ¶ 12. Essentially, they contend that OSU's shift to online classes "deprived students of access to the facilities, materials, and opportunities afforded on OSU's physical campus, including laboratory and research experience, use of on-campus facilities, such as the gym and libraries, and use of on-campus services and events such as sporting events, end-of-year programs, lectures, and various student services." *Id.* ¶ 87.

Defendants move to dismiss on three grounds.[1] First, Defendants contend that the educational malpractice doctrine bars Plaintiffs' claims. Defs. Mot. Dismiss 14-18. Second, Defendants argue that even if the educational malpractice doctrine does not bar Plaintiffs' breach of contract claims, Plaintiffs have still failed to state claims for breach of an express or implied contract. *Id.* at 19-30. Finally, Defendants argue that Plaintiffs' unjust enrichment claim should be dismissed against (1) OSU because it is entitled to sovereign immunity, and Oregon has not

---

[1] Defendants also request that the Court consider one exhibit—the purported contract between Plaintiffs and Defendants—under the doctrine of incorporation by reference. Defs. Mot. Dismiss 8 n.2, Ex. 1. The Court may use the doctrine of incorporation by reference to consider documents in situations where (1) the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, (2) the document's authenticity is not in question, and (3) there are no disputed issues as to the document's relevance. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Here, Plaintiffs dispute the document's relevance, alleging that the exhibit does not contain the provisions that were relied on during the relevant time period. *See* Pls. Opp'n Mot. Dismiss 20, ECF 19. Accordingly, given both Plaintiffs' objection and the Court's ability to resolve the present motion without the attached exhibit, the Court declines Defendants' request.

waived sovereign immunity for unjust enrichment claims, *id.* at 30-35, and (2) the Trustee

Defendants because sovereign immunity applies to them as official capacity Defendants. *Id.* at

14; Defs. Reply in Support Mot. Dismiss ("Defs. Reply") 3-5, ECF 22.

As is discussed in depth below, the Court concludes that the educational malpractice

doctrine does not bar Plaintiffs' claims. The Court also concludes that Plaintiffs have sufficiently

plead facts that allege valid breach of contract claims against OSU. However, because Oregon

has not waived sovereign immunity from quasi-contract unjust enrichment claims, both OSU and

the Trustee Defendants are entitled to sovereign immunity on the unjust enrichment claim and

that claim is dismissed. Accordingly, Defendants' motion is granted in part and denied in part.

## I.    Educational Malpractice

Defendants argue that all Plaintiffs' claims are merely educational malpractice claims

and, as such, should be dismissed. Defs. Mot. Dismiss 14-19. The Court disagrees.

Claims for educational malpractice challenge "the sufficiency or quality of education

provided by educational intuitions." *Zagoria v. N.Y. Univ.*, 20 Civ. 3610(GBD)(SLC), 2021 WL

1026511, at *2 (S.D.N.Y. Mar. 17, 2021). "Oregon, as well as the majority of other jurisdictions,

prohibit claims of educational malpractice or negligence." *Gallagher v. Capella Edu. Co.*, No.

3:19-cv-01342-JR, 2019 WL 8333532, at *4 (D. Or. Dec. 23, 2019), *report and recommendation

adopted*, 2020 WL 1550729 (D. Or. Apr. 1, 2020). Under Oregon law, a court can review a

university's academic decisions related to student conduct and educational requirements only if

that decision was made arbitrarily or in bad faith.[2] *Tate v. N. Pac. Coll.*, 70 Or. 160, 167 (Or.

1914) ("The faculties of colleges, who are authorized to examine their students and pass on the

---

[2] Although Oregon appellate courts have not coined this rule the "educational malpractice doctrine" explicitly, courts that apply similar deference to universities refer to it as such.  *See Gallagher v. Capella Edu. Co.*, No. 21-35188, 2021 WL 6067015, *1 n.1 (9th Cir. 2021).

question whether the students have performed all the conditions prescribed, to entitle them to

degrees, exercise quasi-judicial functions, and their decisions are conclusive, if they act within

their jurisdiction, and in good faith, and not arbitrarily."). Not every decision made by a

university, however, falls under the educational malpractice doctrine: "[C]ontract-based or

alternatively plead equitable claims typically fall outside the educational malpractice doctrine if

they do not necessitate court scrutiny of the faculty's discretionary decision-making in rendering

grades and degrees." *Gallagher*, 2019 WL 8333532, *4 (citing *Dauven v. George Fox Univ.*,

2010 WL 6089077, *16 (D. Or. Dec 3, 2010).

      Plaintiffs' breach of contract and unjust enrichment claims are not foreclosed by the

educational malpractice doctrine. As is argued in their Opposition, Plaintiffs do not challenge the

educational quality of OSU's shift to a remote learning environment, but they rather challenge

OSU's failure to deliver a specific promise of providing an in-person education in exchange for

tuition and fees. Pls. Opp'n Mot. Dismiss ("Pls. Opp'n") 4-9, ECF 19. The Court does not

interpret Plaintiffs' complaint as asking the court to assess the quality of the education provided

in the remote learning environment or to reconsider OSU's decision about rendering grades or

degrees. Instead, Plaintiffs merely allege that they paid tuition and fees to the university in

exchange for certain promises—such as in-person classes and access to on-campus facilities and

services—that OSU broke that promise, and that Plaintiffs are thus entitled to damages based on

that breach. Such a legal theory is not foreclosed by the educational malpractice doctrine under

Oregon law.

      Moreover, "courts across the country have rejected defendant-schools' educational

malpractice arguments on motions to dismiss in nearly every single COVID-19 tuition refund

dispute." *Durbeck v. Suffolk Univ.*, No. CV 20-10985-WGY, 2021 WL 2582621, at *3 (D. Mass.

June 23, 2021) (citing cases); *see* Pls. Opp'n 1-2 (collecting twenty-nine cases denying motions to dismiss in COVID-19 tuition refund cases). Similar to the case here, "this case is not about the quality of [the university's] education. . . . [Plaintiffs'] claim[s are] not about [the university's] *decision* to move to online learning. This case is simply about an alleged promise to provide in-person learning that was allegedly breached." *Salerno v. Fla. S. Coll.*, 488 F. Supp. 3d 1211, 1218 (M.D. Fla. Sept. 16, 2020) (emphasis in original). Here, "[t]he essence of Plaintiff[s'] claims [are] that [they] contracted for in-person classes and certain services, which [they] never received and for which [they] paid a premium. This does not challenge the quality of the education, just that [they] did not receive that for which [they] contracted and pre-paid valuable consideration in the form of tuition and fees." *Spiegel v. Trustees of Ind. Univ.*, No. 53c06-2005-CT-000771, 2020 WL 7135320 (Cir. Ct. Ind. Nov. 19, 2020).

The Court does not find Defendants' arguments to the contrary persuasive. While Defendants rely on *Linder v. Occidental Coll.*, No. CV 20-8481-JFW, 2020 WL 7350212 (C.D. Cal. Dec. 11, 2020), a case that granted a motion to dismiss in a similar COVID-19 tuition refund action, the claims in that case are distinguishable from the ones that Plaintiffs assert here. *See* Defs. Mot. Dismiss 16-17. In *Linder*, the students claimed that once the university shifted to remote instruction, the education that the students received was "sub-par," not "worth the amount charged," and not "in [any] way the equivalent of [an] in-person education." *Id*. at *7. Plaintiffs' claims here are different: they do not challenge the substance or quality of the online courses that OSU provided; Plaintiffs seek reimbursement for the services that they bargained and paid for—in-person classes and access to on-campus facilities and services—after they received online classes instead.

Furthermore, Defendants argue that Plaintiffs' damages theory demonstrates that their claims are barred by the educational malpractice doctrine, because a damages award would require an inquiry into whether Plaintiffs paid "too much" for a remote education, which would require a subjective inquiry into the quality of the education that Plaintiffs' received. Defs. Mot. Dismiss 17-18. Additionally, Defendants contend that Plaintiffs have failed to allege any facts establishing that they were actually damaged by receiving an online education. *Id.* at 18-19.

At this stage in the proceedings, it is too early for the Court to make that determination. Plaintiffs sufficiently alleged how much they paid for tuition during the relevant academic years, Compl. ¶¶ 67-68, what they expected those tuitions and fees to pay for (*e.g.*, in-person classes, access to on-campus facilities and services, etc.), *id.* ¶¶ 66, 70, and the difference in cost between an in-person education and an online education at OSU. *Id.* ¶¶ 69, 72, 73. As such, a damages calculation "might require only basic arithmetic rather than subjective determinations of educational quality," such as the difference between attending OSU's in-person classes and OSU's online classes. *Durbeck*, 2021 WL 2582621, at *6 (explaining that factual development in a COVID-19 tuition refund case "may reveal instead that the Plaintiffs' evidence on damages depends only on a quantitative calculation of the difference between, for instance, the cost of attending Suffolks's online degree program and the cost of attending Suffolk's in-person degree program").

In sum, given the applicable Oregon law and the persuasiveness of cases from other courts that have decided similar issues, Plaintiffs' claims are not barred by the educational malpractice doctrine. Defendants' motion on this ground is denied.

## II.    Breach of Contract Claims

OSU contends that Plaintiffs' express breach of contract claim should be dismissed because Plaintiffs fail to allege a specific contractual promise for in-person classes. Defs. Mot. Dismiss 21-24. Additionally, OSU asserts that Plaintiffs' implied breach of contract claim should be dismissed because OSU's materials were too vague to imply a contractual obligation to provide in-person classes. *Id.* at 25. Alternatively, OSU argues that even if it promised to provide in-person classes, OSU re-entered into new contracts with Plaintiffs before each academic quarter, so students who chose to attend classes after the Winter 2020 Quarter knew that that they would not receive in-person classes. *Id.* at 24-25, 26-30. The Court is not persuaded.

To state a claim for breach of contract under Oregon law, a plaintiff must allege "the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damage to plaintiff." *Slover v. Or. State Bd. of Clinical Soc. Workers*, 144 Or. App. 565, 570 (1996) (internal quotations and citations omitted). There is not a legal distinction between an express and implied contract: "[t]he only difference between them is the means by which the parties manifest their agreement. In an express contract, the parties manifest their agreement by their words, whether written or spoken. In an implied-in-fact contract, the parties' agreement is inferred, in whole or in part, from their conduct." *Staley v. Taylor*, 165 Or. App. 256, 262 (2000).

Regarding contracts between students and universities, "the Oregon Supreme Court [has] acknowledged that payment of tuition may form a contract for educational services between a student and the school." *Brady v. Portland State Univ.*, No. 3:18-CV-01251-HZ, 2019 WL 4045652, at *4 (D. Or. Aug. 23, 2019) (citing *Tate*, 70 Or. at 165). Additionally, Oregon law "recognizes that a student and a private university may have a contractual relationship based on

the terms contained in publications and that the university provides to the student." *Dauven*, 2010 WL 6089077, at *16 (citing *Tate*, 70 Or. at 165); *see Bird v. Lewis & Clark Coll.*, 104 F. Supp. 2d 1271, 1276 (D. Or. May 24, 2000) ("The basic legal relation between a student and private university or College is contractual in nature. The catalogs, bulletins, circulars, and regulations of the institution made available to the matriculant became part of the contract.") (quoting *Ross v. Creighton Univ.*, 957 F.2d 410 (7th Cir. 1992) (internal quotations omitted)). The relevant inquiry is whether the university's "communications and overt acts suggest it manifested assent to be bound by a promise." *Vejo v. Portland Pub. Sch.*, 204 F. Supp. 3d 1149, 1175-76 (D. Or. 2016), *rev'd on other grounds*, 737 F. App'x 309 (9th Cir. 2018); *see Breyer v. Pac. Univ.*, No. 3:17-cv-0036-AC, 2017 WL 3429395, *4 (D. Or. Aug. 9. 2017). And that inquiry—whether a statement or act is a manifestation of assent—is a question of fact. *Vejo*, 204 F. Supp. 3d at 1175-76.

Plaintiffs have sufficiently alleged a promise for an in-person education based on both statements from OSU's materials and by the university's usual and customary practices. Plaintiffs alleged information from OSU's website and promotional materials that highlighted the opportunities and advantages of being on-campus and taking in-person classes. *See* Compl. ¶¶ 52, 53, 31, 34-35, 53. Additionally, Plaintiffs registered for courses on OSU's physical campus, and in doing so, OSU provided a scheduled meeting time and a campus location for those classes for the Winter and Spring 2020 quarters. *See id.* ¶¶ 40-42. Moreover, Plaintiffs alleged that they paid tuition and fees at the price set for in-person classes with the expectation that they would receive an in-person education as opposed to an online education. *Id.* ¶¶ 66, 73. Further, Plaintiffs allege that they paid mandatory fees associated with the on-campus use of facilities and services—which students who enrolled in online courses did not pay—and that

Plaintiffs did not receive any refund for those fees. *Id.* ¶¶ 70, 72, 74. When considering all those

assertions together, the Court finds that Plaintiffs have sufficiently alleged facts supporting

claims for breach of express and implied contracts.

Defendants also contend that Plaintiffs re-contracted with OSU at the start of each

academic Quarter, which modified any promise of in-person classes from Spring 2020 beyond.

Defs. Mot. Dismiss 24-25, 26-30. However, Plaintiffs do not allege in their complaint that they

entered into a series of quarterly contracts. *See* Pls. Opp'n 16. Accordingly, Defendants present a

question of fact—whether Plaintiffs engaged in one contract or a series of contracts with OSU—

that is not appropriate to be resolved at this stage of the proceedings. *See Wilson v. Hewlett-*

*Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) ("When evaluating the sufficiency of a

complaint's factual allegations, the court must accept all material facts alleged in the complaint

as true and construe them in the light most favorable to the non-moving party.").

Furthermore, "courts have largely denied universities' motions to dismiss on nearly

identical breach of contract claims because they found there were sufficient facts to allege a

contract for in-person instruction based on university handbooks, catalogs, and brochures." *Doe*

*v. Univ.*, No. 20-1264, 2020 WL 7634159, at *2 (C.D. Ill. Dec. 22, 2020) (collecting cases); *see*

*Zahn v. Ohio Univ.*, No. 2020-00371JD, 2020 WL 6163919, at *3 (Ohio Ct. Cl. Oct. 19, 2020)

(denying motion to dismiss express and implied breach of contract claims in a COVID-19 tuition

refund case where the "[p]laintiff has alleged that she paid an amount of money to OU with the

expectation that she would receive an in-person education rather than an online education. [The

p]laintiff has also alleged that she paid money for certain mandatory fees and has not received

the services associated with those fees."); *Bergeron v. Rochester Inst. of Tech.*, No. 20-CV-6283

(CJS), 2020 WL 7486682, at *8 (W.D.N.Y. Dec. 18, 2020) (denying motion to dismiss breach of

contract claims in COVID-19 tuition refund case where the "[p]laintiffs identify a multitude of promises made by RIT regarding the benefits of its in-person, on-campus program, including opportunities to work directly with faculty in their labs, vibrant and diverse campus life, access to superior technology, and robust on-campus support").

Along with the relevant Oregon law, this Court is further persuaded by the cases from its sister courts that Plaintiffs have sufficiently alleged facts to adequately assert claims for breach of contract. Thus, Plaintiffs' breach of contract claims are sufficient to survive a motion to dismiss, and Defendants' motion on this ground is denied.

## III.    Unjust Enrichment Claims

Finally, Plaintiffs assert unjust enrichment claims against all Defendants. Defendants argue that Plaintiffs' unjust enrichment claims should be dismissed against all Defendants because, among other reasons, (1) Oregon has not waived sovereign immunity from unjust enrichment claims, Defs. Mot. Dismiss 30-34, and (2) sovereign immunity applies to the Trustee Defendants as official capacity defendants. Defs. Reply 3-4. The Court agrees.

### A.    Unjust Enrichment Claim Against OSU

OSU is a public university. Or. Rev. Stat. § ("O.R.S.") 352.002. "[P]ublic universities are entitled to sovereign immunity" unless Congress has explicitly abrogated sovereign immunity or the State consents to suit. *Committe v. Or. State Univ.*, No. 6:18-CV-00328-AA, 2018 WL 4623159, at *2 (D. Or. Sept. 26, 2018) (citing *Rounds v. Or. State Bd. of Higher Educ.*, 166 F.3d 1032, 1035 (9th Cir. 1999)); *Anderson v. Dep't of Rev.*, 313 Or. 1, 7 (1992) (explaining that pursuant to the Oregon constitution, the state is entitled to sovereign immunity, and is immune from suit, except as it consents by general law). Importantly, the Oregon Court of Appeals has held that Oregon "has not waived its sovereign immunity from unjust enrichment claims." *Curzi*

*v. Or. State Lottery*, 286 Or. App. 254, 270-71, *review denied*, 362 Or. 175 (2017). Thus, OSU, as a public university, is entitled to sovereign immunity from unjust enrichment claims.

Plaintiffs' contentions otherwise miss the mark. In their Opposition, Plaintiffs contend that Oregon's waiver of sovereign immunity for contract claims pursuant to O.R.S. 30.320 extends to quasi-contract claims, which includes unjust enrichment claims. Pls. Opp'n 22 (citing *Walker v. Mackey*, 197 Or. 197, 221 (1953)). However, *Curzi* explicitly rejected that same contention in 2017: "Significantly, quasi-contract claims, such as [the] plaintiff's claim for unjust enrichment, are not claims asserted "'upon a contract . . . made by' the state, but rather are claims that may be asserted even in the *absence* of an express contract." *Curzi*, 286 Or. App. 270 (quoting O.R.S. 30.320) (emphasis in original). Thus, Plaintiffs' unjust enrichment claim against OSU is dismissed as barred by sovereign immunity.

> **B.    Unjust Enrichment Claim Against Trustee Defendants**

"Sovereign immunity also applies to state officials acting in their official capacity, not state officials acting in their individual capacities." *Committe v. Or. State Univ.*, No. 6:16-CV-00962-MC, 2016 WL 4374945, at *2 (D. Or. Aug. 11, 2016) (concluding that OSU employees acting in their official capacity are immune from suit). As is the case with public universities, OSU employees "acting within their official capacities are shielded from suit." *Committee*, 2018 WL 4623159, at *2; *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984) ("And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief."); *Hopkins v. Clemson Agr. Coll. of S.C.*, 221 U.S. 636, 644 (1911) ("The state, as a sovereign, is not subject to suit; that the state cannot be enjoined; and that the state's officers,

16 – OPINION & ORDER

when sued, cannot be restrained from enforcing the state's laws, or be held liable for the consequences flowing from obedience to the state's command.").

OSU's Board of Trustees make up OSU's governing board. O.R.S. 352.054(1)(c), (2)(c). The board of trustees is appointed by the governor and confirmed by the senate. O.R.S. 352.076(1)(2). As noted above, Oregon has not waived its immunity from suit for unjust enrichment claims. Accordingly, the Trustee Defendants in their official capacities are also entitled to sovereign immunity on the unjust enrichment claim.

## CONCLUSION

The question presented at this stage in the proceedings is not whether OSU's decision to shift to an online learning environment was reasonable or justified. For the purpose of this Motion to Dismiss, the relevant question was whether Plaintiffs have sufficiently alleged facts in their complaint that, when accepted as true and all reasonable inferences are drawn in their favor, support their underlying legal claims. The Court concludes that the educational malpractice doctrine does not bar Plaintiffs' claims, and Plaintiffs have sufficiently alleged facts supporting their breach of contract claims. However, Plaintiffs' claims for unjust enrichment are dismissed because both OSU and the Trustee Defendants are entitled to sovereign immunity. Accordingly, Defendants' Motion to Dismiss is DENIED in part and GRANTED in part.

IT IS SO ORDERED.


DATED: _____January 25, 2022_____.



_Marco Hernandez_
MARCO A. HERNÁNDEZ
United States District Judge