IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DANIELLE PRANGER and GARRETT HARRIS, individually and on behalf of all others similarly situated, | No. 3:21-cv-00656-HZ |
| | OPINION & ORDER |
| Plaintiffs, | |
| v. | |
| OREGON STATE UNIVERSITY, a public body of the State of Oregon, | |
| Defendant. | |

Alexander Graven
Neil N. Olsen
Paul B. Barton
Olsen Barton LLC
5 Centerpointe Drive, Suite 220
Lake Oswego, OR 97035

Daniel Kurowski
Hagens Berman Sobol Shapiro LLP
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611

Steve W. Berman
Hagens Berman Sobol Shapiro LLP
1301 2nd Ave., Suite 2000
Seattle, WA 98101

Jae Kook Kim
Lynch Carpenter, LLP
117 E. Colorado Blvd. Suite 600
Pasadena, CA 91105

Tiffine Malamphy
Lynch Carpenter, LLP
111 W. Washington St., Suite 1240
Chicago, IL 60602

      Attorneys for Plaintiffs

Gregory J. Mina
Sarah J. Crooks
Stephen F. English
Perkins Coie, LLP
1120 NW Couch Street, 10th Floor
Portland, OR 97209-4128

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiffs Danielle Pranger and Garrett Harris, students at Oregon State University

("OSU") during the Winter, Spring, and Fall 2020 academic terms, bring this class action lawsuit

on behalf of themselves and all similarly situated students. Plaintiffs allege that Defendant OSU

breached contracts with them when it closed on-campus services and facilities and provided only

online classes in response to the COVID-19 pandemic. Plaintiffs claim that Defendant failed to

provide in-person instruction and access to campus facilities as promised under the contracts,

despite Plaintiffs keeping their end of the bargain by paying the same amount of tuition.

The Court previously issued an Opinion and Order denying in part and granting in part Defendant's motion to dismiss. ECF 27. The Court later denied Defendant's motion for reconsideration, motion to certify a question to the Oregon Supreme Court, and motion for interlocutory appeal. ECF 54. Now before the Court is Defendant's Motion for Summary Judgment. ECF 61. For the reasons stated below, the Court grants Defendant's motion.

## BACKGROUND

OSU is Oregon's largest university with an enrollment of around 33,300 undergraduate, graduate, and professional students. Class Action Complaint ("Compl.") ¶ 26, ECF 1-1. OSU's main campus is located in Corvallis, Oregon. Compl. ¶¶ 19, 29-30. The university runs on an academic quarter system, with the school year divided into four "quarters" or "terms." Compl. ¶ 63.

Plaintiff Pranger was enrolled as a full-time undergraduate student at OSU for nine terms from Fall 2019 through Fall 2021. Mathern Decl. ¶ 5, ECF 63. Plaintiff Harris attended OSU for eighteen terms from Fall 2017 through Spring 2022 and graduated with a Bachelor of Science degree in June 2022. *Id.* Both Plaintiffs were Oregon residents who paid OSU tuition and fees for the Winter, Spring, and Fall 2020 academic quarters. Compl. ¶¶ 9-11. The Winter 2020 quarter ended March 20, 2020, and the Spring 2020 quarter ran from March 30, 2020 to June 12, 2020. Mathern Decl. ¶ 3.

In March 2020, states, municipalities, and institutions throughout United States scrambled to quickly implement policies in response to the COVID-19 global pandemic.[1] Oregon Governor Kate Brown declared a state of emergency on March 8, 2020. Executive Order

---

[1] On March 11, 2020, the World Health Organization announced that COVID-19 is a global pandemic, and on March 13, 2020, the President of the United States declared the COVID-19 outbreak to be a national emergency. *See Executive Order 20-09*, ECF 65-2.

No. 20-03, ECF 65-1. On March 11, 2020, in an effort to control the spread of COVID-19, OSU

announced a policy "to reduce the frequency of interactions among students, faculty, staff and

visitors." Feser Decl. Ex. 1, ECF 64-1. The policy required Winter 2020 term final exams either

to be administered remotely or be conducted using a social distance model if exams had to be

administered in person. *Id.*

   On March 16, 2020, OSU announced to students, employees, and the public that "[u]ntil

further notice, most programs and services will utilize remote methods of teaching, testing and

meetings." Feser Decl. Ex. 2, ECF 64-2. OSU also informed students that despite moving to

remote delivery of instruction, it did not anticipate decreasing spring term tuition and fees. *Id.*

Then, on March 18, 2020, OSU announced: "Effective Monday, March 30, and throughout the

spring term, all OSU campus instruction will be conducted remotely." Feser Decl. Ex. 3, ECF

64-3. The next day, March 19, 2020, Governor Brown issued Executive Order 20-09, which

stated in relevant part:

> Oregonians are depending on colleges and universities to remain operational to the
> greatest extent possible consistent with protecting public health, including
> thousands of students who expect to graduate in Spring 2020.
>
> Oregon colleges and universities can maintain academic continuity for many
> students by conducting courses through remote and online learning.

ECF 65-2. The Executive Order provided:

> Pursuant to my emergency powers under [statute], it is ordered that colleges and
> universities shall be *prohibited from conducting in-person classroom, laboratory,*
> *and other instruction* from March 21, 2020, through April 28, 2020 ("effective
> period"), unless the period is extended or terminated earlier by the Governor.

*Id.* (emphasis added). The Order further stated: "Pursuant to ORS 401.192(1), the

directives set forth in this Executive Order shall have the full force and effect of law[.]"

*Id.* On April 17, 2020, the governor issued Executive Order 20-17, which extended the

prohibition on in-person classroom instruction under Executive Order 20-09 through June 13, 2020. ECF 65-3.

Both Plaintiff Pranger and Plaintiff Harris selected and registered for courses in advance of the Spring 2020 quarter. Compl. ¶¶ 40, 43. At the time they registered, they were provided with a physical classroom location on campus for each course. Compl. ¶¶ 40, 42. Both Plaintiffs attended their courses remotely through the Spring Term, passed each course, and received academic credit. Mathern Decl. ¶ 7. Plaintiff Harris paid tuition for the Spring 2020 term on March 23, 2020, and Plaintiff Pranger paid tuition for that term on April 27, 2020. Mathern Decl. ¶ 4. Because of the COVID-19 pandemic, OSU extended the deadline to drop classes without academic penalty and receive a full refund on tuition from April 5, 2020, to April 12, 2020. Mathern Decl. ¶ 7; Feser Decl. Ex. 4. Both Plaintiffs also enrolled in and paid tuition for courses during the Summer 2020 term and all terms during the 2020-2021 academic year. Mathern Decl. ¶¶ 4,5. OSU primarily administered classes remotely during the Summer 2020 term and throughout the 2020-2021 academic year. Feser Decl. ¶ 9.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"Summary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (internal quotation marks omitted); *see also Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20, AFL-CIO v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985) ("Even where the basic facts are stipulated, if the parties dispute what inferences should be drawn from them, summary judgment is improper.").

## DISCUSSION

Plaintiffs bring claims for breach of express or implied contract. Plaintiffs assert that when they initially enrolled at OSU, they entered into binding contracts with Defendant "by accepting its offer of enrollment in accordance with terms of the Catalogs, OSU's publications,

and OSU's usual and customary practice of providing on-campus courses." Compl. ¶ 115. Plaintiffs claim that university publications and promotional marketing materials created a contract term that obligated Defendant to provide them in-person education and access to facilities throughout their entire enrollment at OSU. Plaintiffs claim that Defendant breached the contract in March 2020 by ceasing in-person instruction, shutting down campus facilities, and providing exclusively remote instruction.

To establish breach of contract under Oregon law, a plaintiff must show (1) the existence of a contract and its relevant terms; (2) that the plaintiff fully performed and did not breach the contract; (3) that the defendant breached the contract; and (4) that the breach resulted in damages to the plaintiff. *Schmelzer v. Wells Fargo Home Mortg.*, No. CV-10-1445-HZ, 2011 WL 5873058, at *4 (D. Or. Nov. 21, 2011) (citing *Slover v. Or. State Bd. of Clinical Soc. Workers*, 144 Or. App. 565, 570-71, 927 P.2d 1098, 1101 (1996)). In its motion for summary judgment, Defendant does not address Plaintiffs' contention that their contracts included an express or implied requirement to provide in-person instruction and access to campus facilities. Nor does Defendant oppose each Plaintiff's contention that they entered into a single contract when they first enrolled at OSU that lasted through their entire enrollment rather than separate contracts for each term in which they enrolled in classes and paid tuition. In ruling on Defendant's summary judgment motion, the Court must construe relevant facts in favor of Plaintiffs. Thus, for this Opinion, the Court assumes that Defendant had a valid contract with each Plaintiff, the terms of which included providing in-person instruction and full access to campus facilities throughout their entire enrollment at OSU in exchange for full tuition payment each term.

But according to Defendant, even if such contracts existed, it is entitled to summary judgment for two reasons. First, Defendant argues that the doctrine of impossibility excuses its

failure to perform on any promise to provide in-person instruction. Second, Defendant contends

that Plaintiffs agreed to modify the terms the contract when they enrolled in classes for the

Spring 2020 and subsequent terms, paid full tuition, and failed to withdraw or seek refunds,

despite knowing that classes would be conducted remotely and access to campus facilities would

be limited.

## I.    Judicial Notice

As a preliminary matter, Defendant moves the court to take judicial notice of three

executive orders issued in March 2020 and April 2020 by Oregon Governor Kate Brown under

the state of emergency she declared in response to the COVID-19 pandemic. Def. Mot. Judicial

Notice, ECF 65. Plaintiffs have not expressed opposition to this motion.

Under the Federal Rules of Evidence, a court "may judicially notice a fact that is not

subject to reasonable dispute[.]" Fed. R. Evid. 201(b). Such facts must either be "generally

known within the trial court's territorial jurisdiction" or be "accurately and readily

determin[able] from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid.

201(b)(1)-(2). A court "may take judicial notice at any stage of the proceedings." Fed. R. Evid.

201(d). And under the rules of evidence, a court "*must* take judicial notice if a party requests it

and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2) (emphasis

added).

In support of its motion for summary judgment, Defendant requests that the court take

judicial notice of Executive Order 20-03 issued by Governor Brown on March 8, 2020,

Executive Order 20-09 issued March 19, 2020, and Executive Order 20-17 issued April 17, 2020,

which are attached as exhibits to their Motion for Judicial Notice. ECF 65-1, 65-2, 65-3. The

Court finds that the accuracy of these documents can easily be confirmed and all three executive

orders are matters of public record. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir.

2001) (citation omitted) ([A] court may take judicial notice of 'matters of public record'").

Accordingly, Defendant's motion for judicial notice is granted.

## II.    Supervening Impossibility

Under Oregon law, a party may be excused from performing a contractual obligation "if a

supervening event makes performance impossible." *Wells Fargo Bank, N.A. v. The Ash Org.*,

No. 09-CV-188-MO, 2010 WL 2681675, at *4 (D. Or. July 2, 2010). "Supervening impossibility

occurs 'where . . . facts that a promisor had no reason to anticipate, and for the occurrence of

which he is not in contributing fault, render performance of the contract impossible[.]'" *Savage*

*v. Peter Kiewit Sons' Co.*, 249 Or. 147, 152, 432 P.2d 519, 522 (1967) (quoting Restatement

(First) Contracts § 457 (1932)). "[U]nexpected difficulties and expense . . . do not necessarily

excuse performance of a contract." *Id.* at 153. But "[i]f the performance of a duty is made

impracticable by having to comply with a . . . governmental order," a party may be excused from

performance. *Wells Fargo Bank., N.A.*, 2010 WL 2681675, at *4 (quoting Restatement (Second)

Contracts § 264 (1981)).

Undisputed facts show that Defendant's change to remote instruction was entirely

unexpected and unavoidable. After the Oregon governor declared a state of emergency on March

8, 2020, Defendant implemented policies to prevent the spread of COVID-19 based on guidance

from public health authorities. Such measures, including social distancing and decreasing

interactions among faculty, staff, and students, were necessary to keep the public safe and save

lives. At the time, no one could anticipate how long such measures would be necessary.

When Governor Brown issued Executive Order 20-09 on March 19, 2020, which

prohibited in-person instruction at all Oregon colleges and universities, Defendant's ability to

provide in-person instruction under the contracts was rendered impossible. Executive Order 20-17 extended the prohibition through the entire Spring 2020 term. Even if Plaintiffs had contracts for in-person instruction throughout the entire time they were enrolled at OSU, in forming such contracts, the parties necessarily assumed that in-person classes would remain practicable. *See* Restatement (Second) of Contracts § 261 (1981) (emphasis added) ("Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event *the non-occurrence of which was a basic assumption on which the contract was made*, his duty to render that performance is discharged."). Defendant could not have anticipated a global pandemic requiring drastic social distancing measures and the resulting executive orders that would prohibit in-person classes. Thus, Defendant's duty to provide in-person instruction and full access to campus facilities was discharged by the governor's executive orders that made such performance impossible.

Plaintiffs assert that if Governor Brown's executive orders rendered Defendant's performance impossible, the orders would have been unconstitutional under the Oregon Constitution. Under its "Contracts Clause," the Oregon Constitution provides that "[n]o . . . law impairing the obligation of contracts shall ever be passed." Or. Const. Art. I, § 21. Plaintiffs argue that because Defendant is an arm of the state, allowing Defendant's obligation to perform under the contract to be discharged would be an unconstitutional interpretation of the governor's executive orders.

To determine whether the state has violated the Contracts Clause, courts engage in a two-step analysis: "First, it must be determined whether a contract exists to which the person asserting an impairment is a party; and second, it must be determined whether a law of this state has impaired an obligation of that contract." *Hughes v. State*, 314 Or. 1, 14, 838 P.2d 1018, 1025

(1992). For the purposes of this motion, we assume that the parties had a contract that required

Defendant to provide in-person instruction. And because the executive orders prohibited

universities from providing in-person instruction during the COVID-19 pandemic, they were

laws that impaired Defendant's ability to meet that contractual obligation.

But the impairment of contracts doctrine is not absolute. "[L]aws that substantially impair

contracts may nevertheless be valid if the impairment is reasonable and necessary to serve an

important public purpose." *Moro v. State*, 357 Or. 167, 220, 351 P.3d 1, 38 (2015) (internal

quotation marks and citation omitted). One limit on application of the Contracts Clause is that

"the state may not contract away its 'police power.'" *Eckles v. State*, 306 Or. 380, 398, 760 P.2d

846, 857 (1988). "[A] state's police power includes the power to enact reasonable regulations for

the protection of the public health and the public safety." *Elkhorn Baptist Church v. Brown*, 366

Or. 506, 524-25, 466 P.3d 30, 43 (2020) (internal quotation marks omitted). In other words, "a

state [is] under no obligation to keep agreements that [are] or [have] become contrary to certain

aspects of public welfare." *Eckles*, 306 Or. at 398.

In issuing Executive Orders 20-09 and 20-17, Governor Brown validly used her authority

to exercise the state's police power to protect public health and safety during the COVID-19

pandemic. *See Elkhorn Baptist Church*, 366 Or. at 528 ("[T]he Governor has the statutory

authority to declare a state of emergency to respond to the coronavirus pandemic, which, in turn,

enables her to take actions to protect public health, including restricting gatherings and requiring

social distancing."). Any contractual obligation on the part of Defendant to provide in-person

instruction was rendered impossible to perform by the executive orders, which discharged

Defendant's duty under the contract. As a valid exercise of the state's police power, the governor

did not violate Article I, Section 21 by prohibiting in-person instruction at colleges and

11 – OPINION & ORDER

universities. Nor did Defendant violate the state constitution by complying with the governor's executive orders.

Plaintiffs next assert that questions of material fact exist as to whether Defendant bore the risk of a supervening impossibility. Plaintiffs argue the risk of an infectious disease outbreak affecting its campus was foreseeable to Defendant. Plaintiffs point to Defendant's "Infectious Disease Response Protocol" as evidence that Defendant specifically knew about a risk of coronavirus outbreak on campus. *See* Kim Decl. Ex. A, ECF 68-1. And according to Plaintiffs, because Defendant assumed the risk of impossibility, Plaintiffs were relieved of their duty to pay full tuition. *See Beck v. J.M. Smucker Co.*, 277 Or. 607, 613, 561 P.2d 623, 626 (1977) ("A promisor who, after having assumed a contractual duty . . . acquires knowledge of facts which would warn a reasonable person of impossibility . . . assumes the risk of impossibility and the promise is relieved of the duty to pay for the useless performance."). Thus, Plaintiffs contend that Defendant owes them restitution in the amount of the difference in value between an in-person education and an online education.

But Plaintiffs' argument fails for two reasons. First, Defendant's Infectious Disease Response Protocol describes a general structure and communication strategy in the event of an infectious disease outbreak. Nothing in that document supports Plaintiffs' contention that Defendant could have anticipated a global pandemic on the scale of COVID-19 or could have foreseen that executive orders from the governor would require it to temporarily close facilities and discontinue in-person instruction.

Second, Plaintiffs' conduct in enrolling in courses, paying full tuition, and completing course remotely during the Spring 2020 semester and beyond demonstrates that they accepted the terms of Defendant's offer to modify the contracts. *See* III., *infra*. Thus, even if Defendant

could have foreseen a condition that would make performance under the contract impossible, it did not have to reimburse Plaintiffs for any difference in value between in-person and remote instruction.

Undisputed facts show that Defendant was relieved of any duty to provide in-person instruction under its contract with Plaintiffs because the COVID-19 pandemic and the governor's executive order rendered such performance impossible. A state court recently made the same finding in an identical case brought against another state university. *See* Transcript of Proceedings 10:17-20, *Smith v. Univ. of Oregon*, No. 21CV10708 (Or. Cir. Jan. 26, 2023) ("Executive Order 20-09 and Executive Order 20-17 unambiguously made it impossible for the defendant to provide plaintiff with in-person educational experience."). The executive orders and resultant impossibility discharged Defendant's duty to perform under the express or implied contracts. *See Perla Dev. Co., Inc. v. Pacificorp*, 82 Or. App. 50, 54, 727 P.2d 149, 151 ("[The defendant] is excused from performance on the contract, because subsequent governmental action prohibited its performance; in fact, it made it illegal. Therefore, [the defendant's] duty to perform was discharged."). As a result, Plaintiffs' claims for breach of contract fail as a matter of law.

## III. Substitution or Modification

Defendant asserts that even if it had a contractual obligation to provide in-person instruction, Plaintiffs agreed to modify the terms of the contracts or substitute that contractual duty by assenting to new agreements. "A substituted contract is a contract that is itself accepted by the obligee in satisfaction of the obligor's existing duty." *Eagle Indus., Inc. v. Thompson*, 321 Or. 398, 411, 900 P.2d 475, 482 (1995) (quoting Restatement (Second) of Contracts § 279 (1981)). When parties to a contract agree, a substituted contract discharges their duty to perform

under the original contract. *Id.* The obligee, therefore, no longer has a right to enforce the original contract. *Id.*

Defendant argues that it unequivocally made an offer to substitute or modify the terms of the original contracts when on March 16, 2020 and March 18, 2020, it informed students that it would provide only remote instruction for the Spring 2020 term and that tuition and fees would not be increased or decreased. Defendant asserts that Plaintiffs accepted the substituted terms of the contract when, after the offer was made, both Plaintiffs paid full tuition for the Spring 2020 term, attended classes, completed the term without withdrawing, and received academic credit. Plaintiffs also paid tuition knowing that classes would be administered remotely during the Summer 2020 term and subsequent terms in the 2020-2021 academic year. Thus, according to Defendant, it did not breach any promise to provide an in-person education for the Spring 2020 term and beyond.

Under Oregon law, "parties to a contract may modify that contract by mutual assent," which "may be expressed in words or inferred from actions of the parties." *Bennett v. Farmers Ins. Co.*, 332 Or. 138, 148, 26 P.3d 785, 792 (2001). But "[a] modification of an existing contract requires additional consideration for the modification to be binding." *McPhail v. Milwaukie Lumber Co.*, 165 Or. App. 596, 600, 999 P.2d 1144, 1148 (2000). "Consideration is the accrual to one party of some right, interest, profit, or benefit or some forbearance, detriment, loss or responsibility given, suffered, or undertaken by the other." *Id.* at 600-01.

Plaintiffs first argue that they did not actually accept Defendant's offer to modify the contract and did not assent to the modified terms. "Oregon subscribes to the objective theory of contracts." *Newton/Boldt v. Newton*, 192 Or. App. 386, 392, 86 P.3d 49, 52 (2004). Thus, a parties uncommunicated understanding and undisclosed intent are irrelevant. *DCIPA, LLC v.*

14 – OPINION & ORDER

*Lucile Slater Packard Children's Hosp.*, 868 F. Supp. 2d 1042, 1053 (D. Or. 2011). The Court must determine whether Plaintiffs manifested assent to modified terms of the contract by looking "to their communications and overt acts." *Id.* Thus, regardless of Plaintiffs' subjective intent, they overtly expressed assent to modified contract terms by paying tuition, participating in classes and completing coursework online, and receiving academic credit. *See Smith*, No. 21CV10708, Transcript of Proceedings 14:2-4 ("[The plaintiff's] actions objectively indicated he was willing to attend classes remotely, pay for them in accordance with the terms offered by the university, and accept the benefits of those terms.").

Next, Plaintiffs assert that their payment of full tuition for the Spring 2020 term and beyond was not a manifestation of assent to remote instruction because they "had a pre-existing obligation to pay whatever tuition and fees Defendants assessed" and they had no other feasible educational options. Pl. Resp. to Def. Mot. Summ. J. ("Pl. Resp.") 18, ECF 67. In arguing that taking classes remotely did not signify assent, Plaintiffs rely on the court's denial of a defendant university's motion to dismiss in *Rosado v. Barry Univ Inc.*, 499 F. Supp. 3d 1152 (S.D. Fla. 2020). But in *Rosado*, the defendant university operated on a semester schedule rather than a quarter schedule. *Id.* at 1155. Because of the COVID-19 pandemic in March 2020, the university switched to remote learning in the middle of the Spring 2020 semester that ran from January through May 2020. *Id.* Students had paid full tuition for the entire semester, and the university refused to provide a refund. *Id.* In denying the defendant's motion to dismiss, the court in *Rosado* relied in part on the plaintiff's pleading that "a withdrawal request at the time of the campus closure would have triggered the forfeiture of her tuition and a significant academic penalty." *Id.* at 1159.

In contrast, Plaintiffs here affirmatively paid tuition and completed classes *after* Defendant announced that classes would be conducted remotely before the Spring 2020 term began. Plaintiffs could have withdrawn for any or all terms for which Defendant offered only remote instruction without academic penalty and without having to pay tuition. Defendant provided Plaintiffs with extended time to withdraw from classes and receive a refund during each term in which classes were primarily offered online. Thus, Plaintiffs would not have suffered any loss, financial or otherwise, if they had chosen to pause or even discontinue their education at OSU. By paying full tuition and attending classes throughout each term in which only remote instruction was provided, Plaintiffs unambiguously manifested assent to the modified terms of the contracts. *See Rickenbacker v. Drexel Univ.*, No. 20-3353, 2022 WL 970768, at *1 (E.D. Penn. Mar. 30, 2022) (dismissing breach of contract claims because the plaintiff students "were adequately notified of its Spring 2020 term tuition and fees policy," were presented with "clear and accurate information," and yet "still chose to avail themselves of the Spring 2020 term programming and earn credits towards the completion of their degrees").

Lastly, contrary to Plaintiffs' contention, Defendant's offer to modify the contract was supported by new consideration. That consideration consisted of the safety benefits of a remote education during a global pandemic as well as an extension of the deadline to withdraw from classes with a full tuition refund. Whether Plaintiffs view this consideration as sufficient is irrelevant. *See Biersdorf v. Putnam*, 181 Or. 522, 550, 182 P.2d 992, 1004 (1947) (internal quotation marks and citation omitted) ("[I]t is an elementary principle that the law will not enter into an inquiry as to the adequacy of consideration."). Thus, undisputed facts show that the parties entered into modified contracts for Defendant to continue to offer classes and provide instruction remotely during a time when only remote instruction was possible.

**IV.    Additional Discovery**

Along with their substantive objections, Plaintiffs oppose Defendant's motion for summary judgment on the grounds that they have not had the opportunity to obtain discovery. Under Federal Rule of Civil Procedure 56(d), a court may defer ruling on a motion for summary judgment if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts to justify its opposition[.]" The party who seeks to delay ruling on a motion for summary judgment so that it may obtain further discovery bears the burden of showing "what other *specific* evidence it hopes to discover and the relevance of that evidence to its claims." *Stevens v. Corelogic*, Inc., 899 F.3d 666, 678 (9th Cir. 2018) (citation and brackets omitted). The party seeking additional discovery "must explain what further discovery would reveal that is essential to justify its opposition to the motion for summary judgment." *Id.* (citation and brackets omitted). A court may deny a request for additional discovery under Rule 56(d) if the information sought would not aid in its disposition of the summary judgment motion. *See id.* at 677 (citation and ellipses omitted) (holding that a district court may deny a request under Rule 56(d) "when the information sought would not have shed light on any of the issues upon which the summary judgment decision was based").

The discovery Plaintiffs seek relates to "the existence of an implied-in-fact contract" for Defendant to provide an in-person education and access to campus facilities. Pl. Resp. 67. Such information includes "all marketing materials, disclosures, and webpages that were made available to students when considering to apply to [OSU]." *Id.* Plaintiffs also seek discovery of documents concerning Defendant's announcement of the transition to remote learning and Defendant's process for students to transfer out of OSU.

The Court agrees that whether an implied-in-fact contract existed between Plaintiffs and Defendant that required Defendant to provide in-person instruction is an unresolved issue of disputed facts. But resolving that issue is unnecessary for the Court to rule on Defendant's summary judgment motion. The Court views any disputed facts in the light most favorable to Plaintiffs. As the Court has stated, for the purposes of this motion, it assumes that the parties formed a contract for Defendant to provide in-person instruction and all the benefits of its campus to Plaintiffs throughout their enrollment at the university. Any further discovery on this issue will not aid the Court in resolving this motion.

The Court also finds that any university policies or procedures for students transferring to another school are irrelevant to whether Plaintiffs assented to modified contract terms. Whether or not Plaintiffs could transfer, they clearly could have declined to take classes and could have not paid tuition during any term in which they chose to do so after Defendant announced that all instruction would be remote. Thus, the Court denies Plaintiffs' request to complete discovery before resolving Defendant's motion for summary judgment.

## CONCLUSION

The Court GRANTS Defendant's Motion for Summary Judgment [61]. Defendant's Motion for Judicial Notice [65] is also GRANTED.

IT IS SO ORDERED.


DATED:_____ May 8, 2023 _____.



_____
MARCO A. HERNÁNDEZ
United States District Judge